IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs at Knoxville April 23, 2014

## TAVARES D. BRADEN v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2006-B-1637      Steve R. Dozier, Judge**

**No. M2013-01340-CCA-R3-PC - Filed June 17, 2014**

Following a jury trial, petitioner, Tavares D. Braden, was convicted of the sale of less than 0.5 grams of cocaine, possession with intent to sell 0.5 grams or more of cocaine, promoting prostitution, possession of marijuana, and evading arrest, for which he received an effective eighteen-year sentence. Following an unsuccessful direct appeal, he filed a petition for post-conviction relief claiming two instances of ineffective assistance of counsel: (1) failure to advise him of his potential sentence exposure and (2) failure to adequately prepare for trial and prepare a defense. After an evidentiary hearing, the post-conviction court denied relief. Following our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ALAN E. GLENN, JJ., joined.

William E. Griffith, Nashville, Tennessee, for the appellant, Tavares D. Braden.

Robert E. Cooper, Jr., Attorney General and Reporter; J. Ross Dyer, Senior Counsel; Victor S. Johnson, III, District Attorney General; and Rachel Sobrero, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

I. Facts and Procedural History

A. Facts from Trial

On direct appeal, this court summarized the facts underlying the convictions as follows:

Corey Sanderson, an officer with the Metro Nashville Police Department, testified that on March 25, 2006, he was working undercover in an attempt to purchase narcotics. Officer Sanderson was located in a car that was wired in order to transmit the conversation he had with the drug seller to other officers, who would be stationed nearby. Officer Sanderson explained that he planned to approach a dealer and ask to purchase drugs, which he would purchase with previously photocopied money. When Officer Sanderson said, "[T]hat's a good deal," this declaration would signal other officers that the exchange was complete. The other officers would then arrest the dealer. The officers were provided photocopies of the money that Officer Sanderson planned to use to purchase the drugs so that the officers could compare the money found on any suspect with the photocopies.

After establishing this plan, the officers traveled to a TA Truckstop, which was located beside a hotel, in an area about which they had received complaints of drug activity. As Officer Sanderson drove into the hotel parking lot, he saw the Defendant sitting in the passenger's seat of a vehicle beside his co-defendant, Ms. Phillips, who was seated in the driver's seat. The officer and the Defendant waved to each other, which Officer Sanderson testified was a common signal that someone was looking for a prostitute or to purchase drugs.

At this point, Officer Sanderson stopped the vehicle he was driving, and the Defendant exited the vehicle in which he was sitting, approached the officer, and asked if the officer was looking to purchase drugs or a prostitute. The officer said, "a girl," and the Defendant told him that the woman who was sitting in the car with him was "for sale." Officer Sanderson asked if he could "get oral sex for twenty dollars," and the Defendant agreed. During this exchange, Ms. Phillips exited the vehicle in which she was sitting and nodded toward the officer, seemingly in agreement.

The Defendant then asked the officer if he needed some "dope," and the officer responded, "[S]ure, I do. I would like some hard." Officer Sanderson explained that "hard" is a common term for crack cocaine. The Defendant told him that he could not get any crack cocaine[ ] but could get some powder. He told the officer to park and wait for two minutes while he retrieved the drugs. The Defendant returned and entered the officer's vehicle in an attempt to avoid police detection, telling the officer that police often frequented the area. The Defendant told the officer that he could purchase the cocaine for $65, and the two then settled on a final price of $60. The Defendant told the officer that the

cocaine was "good stuff" because it came "right off the block," meaning directly from the kilo of cocaine. The officer gave the Defendant three of the previously photocopied twenty-dollar bills, and the Defendant gave him a small clear plastic baggie containing a white powdery substance. The officer said "that's a good deal" to signal the other officers that the transaction was complete.

At that point, the other unmarked police vehicles approached Officer Sanderson's car in which the Defendant was still sitting. When the Defendant saw this, he jumped out of Officer Sanderson's car and began running. Officer Sanderson described the Defendant as "frantic" saying he ran into cars, fell, and kept running away in order to avoid being detained by the police. Eventually, officers apprehended the Defendant and, when searching him, found the previously photocopied twenty-dollar bills, along with an additional $81, some marijuana, and more cocaine.

. . . .

Glen Glenn, a TBI agent, testified that he examined the drugs seized in this case. He determined that the substances submitted by police officers included 0.9 grams of marijuana, 1.0 gram of cocaine in one baggie, and 0.5 grams of cocaine in the other baggie.

Based upon this evidence, the jury convicted the Defendant of the sale of less than 0.5 grams of cocaine, possession with intent to sell 0.5 grams or more of cocaine, promotion of prostitution, possession of marijuana, and evading arrest.

*State v. Tavares Duone Braden*, No. M2009-02240-CCA-R3-CD, 2011 WL 3925711, at *1-3 (Tenn. Crim. App. Sept. 8, 2011). The trial court imposed concurrent sentences of ten years, eighteen years, three years, and two terms of eleven months, twenty-nine days, respectively. *Id.* at *5.

B. Procedural History

On direct appeal, this court outlined the procedural history of this case:

On appeal, the Defendant raises several issues. The State counters that the Defendant has waived one of these issues by failing to file a timely motion for new trial. The record reflects that the trial court entered the judgments in

-3-

this case on May 13, 2008. It filed an amended judgment for Count III on August 4, 2008. The Defendant did not file a motion for new trial. On February 17, 2009, the Defendant filed a pro se petition for post-conviction relief. The trial court appointed counsel, who filed a "MOTION FOR EXTENSION OF TIME," asking the trial court to grant him additional time to file an amend[ed] motion for new trial based upon four reasons, including that the attorney had not represented the Defendant at trial and that the transcripts had not yet been completed. On that same date, the appointed counsel also filed a motion for new trial. On July 2, 2009, the appointed counsel filed a motion for new trial that included the Defendant's claims of ineffective assistance of counsel. The trial court held a hearing on the amended motion for new trial, during which evidence about the ineffectiveness of counsel was presented, and then denied the Defendant's motion. This appeal ensued.

*Id.* at \*5. This court then concluded that

the Defendant, by failing to file a timely motion for new trial, waived review of his objections in this appeal to the effectiveness of his trial counsel. Because the remaining issues raised by the Defendant on appeal involve the sufficiency of the evidence and sentencing, we elect, in the interest of justice, to waive the untimely filing of the notice of appeal and review the issues upon the merits.

In coming to this conclusion, we recognize that the trial court's order that is the basis of this appeal treats the Defendant's motion as a petition for post-conviction relief. While the case was originally filed as a pro se petition for post-conviction relief, the Defendant's appointed counsel filed a motion for an extension of time to file a motion for new trial, which the trial court granted. The trial court then allowed the Defendant's attorney to file an amended motion for new trial. . . . Because the posture of this case was contemplated as a motion for new trial, thereby making the trial court's order a nullity, we will review this case as an appeal from a late filed motion for new trial and not as a timely filed petition for post-conviction relief. The Petitioner will, therefore, be allowed to timely file a petition for post-conviction relief from a final judgment in this case.

*Id.* at \*6-7.

-4-

Accordingly, following an unsuccessful direct appeal to this court, petitioner filed a timely petition for post-conviction relief and, through appointed counsel, an amended petition. He averred that trial counsel was ineffective for the following reasons: (1) failure to adequately prepare for trial; (2) failure to explain petitioner's sentencing range; (3) failure to prepare an adequate defense; and (4) failure to locate and present certain witnesses.[1] The post-conviction court conducted evidentiary hearings in March and April 2013, after which it denied relief by written order dated May 22, 2013. This appeal follows.

## C. Facts from Motion for New Trial and Evidentiary Hearing[2]

In 2009, the trial court held a hearing, styled as the "Motion for a New Trial." Although the witnesses repeated much of their 2009 testimony at the 2013 post-conviction evidentiary hearings, further facts were developed. We have combined the testimony from the hearings into a cogent summary.

Petitioner testified on his own behalf and explained that prior to retaining trial counsel, he was represented by two other attorneys (his first retained attorney shall be referred to as "first counsel," and his subsequent second court-appointed attorney shall be referred to as "second counsel"). During second counsel's representation of petitioner, he posted bond on the charges in the instant case and was arrested on new charges, for which he retained trial counsel to represent him. Second counsel subsequently withdrew as counsel in the instant case because she had spoken with petitioner's co-defendant in the later-arising case.

Petitioner recalled that after trial counsel became involved with this case, he met with trial counsel two times before trial. The first meeting occurred at the jail, and according to petitioner, trial counsel stated that he was not prepared to discuss the case because he had not yet received discovery materials. The second meeting occurred in a visitation room prior to a court appearance, but the discussion focused primarily on the new case petitioner had in general sessions court. Petitioner recalled that trial counsel informed him that he received discovery two or three days prior to trial.

Petitioner denied having reviewed discovery with either of his prior attorneys. He also denied, upon questioning by the court, that any of his attorneys explained the range of

---

[1] In this appeal, petitioner failed to address the issue of ineffective assistance of counsel for failure to locate and present certain witnesses. Thus, we consider this issue abandoned.

[2] This court may take judicial notice of the record of the petitioner's direct appeal. *Helton v. State*, 530 S.W.2d 781, 783 (Tenn. Crim. App. 1975).

punishment or the effect of enhancement factors on his potential sentence. Petitioner claimed that the first time he reviewed discovery was with trial counsel on the morning of trial.

He claimed that he wanted to accept the State's ten-year offer but that trial counsel convinced him to decline it based on the anticipated continuance to grant trial counsel more time to prepare. He also stated that trial counsel advised him that without a photocopy of the "buy money," a jury could not find him guilty because of the lack of evidence. According to petitioner, he "told [trial counsel] time after time [he] wanted to plead guilty."

Petitioner maintained that on the morning of trial, his counsel repeatedly referenced "another big trial" that he had scheduled and that trial counsel was confident he could obtain a continuance of petitioner's case so they would have more time for discussion. Petitioner stated that the only trial strategy they "discussed was something about no lab report." However, on the morning of trial, the State produced the lab report. Trial counsel was ultimately unable to obtain a continuance.

Petitioner acknowledged that he had pleaded guilty to criminal charges previously; in fact, he had never taken a case to trial but had always entered guilty pleas. However, he claimed to have no memory of the judge instructing him that his convictions could be used to enhance future sentences.

Trial counsel, who testified that although he was no longer licensed to practice law in the State of Tennessee, was licensed to practice in 2008 at the time he represented petitioner. In 2008, trial counsel's caseload consisted of approximately ninety percent criminal cases. He had conducted around fifteen jury trials since obtaining his license in 2005. When trial counsel was retained by petitioner, a trial date was pending two to three weeks later. Trial counsel already had a "double aggravated robbery" trial set for the same date in a different courtroom. However, he recalled that the trial judge indicated that petitioner's trial would commence as scheduled and that the trial judge would speak with the judge presiding over trial counsel's other case. As such, trial counsel did not believe that he "ever formally asked for a continuance" in petitioner's case.

Trial counsel testified that during the time before trial, he met with petitioner at the jail two times. Trial counsel requested a copy of the discovery materials from second counsel, but she delayed providing the documents. She instructed trial counsel to "just go get it from the Court file," which he did. When he reviewed the file, trial counsel noted missing lab reports and missing photocopies of the "buy" money. He discussed the discovery materials with petitioner, but he did not provide petitioner with a copy.

Trial counsel stated that he relayed to petitioner the State's settlement offer of ten years to be served at thirty-five percent. Petitioner asked what trial counsel would do in that position, and trial counsel informed petitioner that without proper discovery, he could not adequately advise petitioner but that if he "didn't do it, don't take the ten." However, in conjunction with that discussion, trial counsel did not advise petitioner with regard to his potential sentence exposure.

Trial counsel's strategy focused on the credibility of the officers because they had not produced photocopies of the "buy" money or a copy of the laboratory report. However, on the day of trial, the State provided both of those items to trial counsel. Based on the weight of the drugs, the State asked if trial counsel wished to amend the indictment to reflect a Class C felony rather than a Class B felony. He expected the plea offer to be reduced, but the State informed him that if the charge were reduced to a Class C felony, petitioner would then be a career offender. Trial counsel discussed the settlement offer with petitioner, but they did not "seriously" consider accepting it. Accordingly, he elected not to amend the indictment. He said that the State's producing the missing documents resulted in one particular aspect of his strategy getting "tossed out the window" but that the production of the missing documents did not change his overall trial strategy because he "always challenge[d] the officers' credibility."

When the defendant in trial counsel's other scheduled trial pleaded guilty on the Wednesday prior to petitioner's court date, trial counsel again reviewed the discovery contained in the clerk's file. However, trial counsel did not review petitioner's criminal record at that time. He explained, "I don't know why I didn't take a look at [petitioner's] record. He mentioned to me his previous charges . . . . Obviously, I didn't know that he had sixteen felonies." When trial counsel reviewed the clerk's file, he only looked at discovery, and he did not see the State's notice of enhanced punishment.

Trial counsel acknowledged that he was aware that a female was arrested in conjunction with petitioner's offenses but that he did not locate her or speak with her prior to petitioner's trial. He discounted her importance as a witness, stating, "[H]onestly, . . . I was thinking he's promoting prostitution, so . . . big deal . . . . I didn't think she was going to necessarily make or break the case." However, trial counsel nonetheless attempted to locate the witness, but her contact information was not valid.

Trial counsel admitted that he did not explain petitioner's sentence exposure when they discussed the State's settlement offer. He was unaware of petitioner's criminal history because "the file [he] had was incomplete . . . [and] was probably missing some documents." He admitted that nothing prevented him from reviewing the clerk's file to ascertain whether the State had filed a notice of enhanced punishment.

-7-

Trial counsel confirmed that petitioner had been provided with discovery through his prior two attorneys. He agreed that there were several things that he, as a trial attorney, would do in every drug case, and one of those things was to attack the credibility of the officers. Without the laboratory report, his strategy also involved "shooting for simple possession" rather than possession with intent to distribute. With regard to the plea offer, trial counsel recalled that he advised petitioner not to accept the ten-year offer because the longest sentence he could receive was twelve years on a Class C felony. Trial counsel acknowledged that he had been wrong about petitioner's potential sentence exposure because he did, in fact, receive a longer sentence following the sentencing hearing.

The State called second counsel, who was, at the time of the post-conviction hearing, a twenty-three-year veteran with the District Public Defender's Office. She indicated that she filed for and received discovery in petitioner's case and that as a matter of course, she would have reviewed the strengths and weaknesses of the case as well as potential sentence exposure. She said that some criminal defendants did not wish to keep a copy of the materials if they were incarcerated, and she did not recall whether petitioner wanted a copy for himself. She would have discussed the issues that were raised by the discovery and the available defenses. Second counsel did not recall any discussions with trial counsel regarding her providing him with a copy of the discovery materials.

Second counsel recalled that in petitioner's case, she had organized his prior convictions by date and transaction to determine which ones would be "lumped into one for purposes of range of punishment on future crimes." Second counsel opined that petitioner's prior record was "highly relevant" to his case. In her opinion, petitioner "understood what [they] were talking about." She believed petitioner would be sentenced as a Range II offender on a Class B felony. However, because of the grades of his prior felonies, if petitioner were found guilty of a Class C felony, he would be subject to a higher range of punishment and would face fifteen to sixty years.

Second counsel testified that she withdrew from petitioner's case because he refused to discuss the facts of his new arrest with her and that he told her that he had a new lawyer who was going to represent him on the instant case. She opined that "obviously[,] a defense attorney would want to try to package those up, if at all possible." Second counsel inadvertently learned about petitioner's new arrest through his co-defendant, a "Ms. Nero." Second counsel was appointed to represent Ms. Nero, and Ms. Nero informed her that she had a co-defendant. When second counsel looked up the offenses in the computer, she learned for the first time that petitioner had posted bond on the charges in the instant case and that he was Ms. Nero's co-defendant on the new charges.

The State also called first counsel, who testified that she was appointed to represent petitioner at the setting of his preliminary hearing. However, they did not conduct a hearing because she reached a tentative agreement with the State to resolve petitioner's case. Thereafter, the State rescinded its offer because of petitioner's criminal record. They never reset the preliminary hearing date. First counsel confirmed that she received discovery from the State and that she mailed a copy to petitioner on two different occasions. She also reviewed the discovery materials with petitioner. Further, she became aware of petitioner's criminal history and discussed it with him at their next meeting, at which time she "assumed" she would have discussed his sentencing range. She also documented his potential range of punishment in a letter to him that outlined each charge against him, the potential sentence, and the possibility of him being sentenced as a Range II offender. The letter was introduced as an exhibit at the evidentiary hearing. She also recalled discussing petitioner's record with him "multiple times" because the State rescinded its settlement offer based on his eight prior felony convictions from Maury County.

Petitioner was recalled and denied having received a copy of the letter from first counsel. He also denied having reviewed discovery with anyone or having been advised of his range of punishment.

## II. Analysis

Petitioner raises two claims of ineffective assistance of trial counsel in this appeal: (1) whether trial counsel failed to properly advise him with regard to his range of punishment and (2) whether trial counsel failed to adequately prepare for trial and prepare a defense.[3]

## A. Standard of Review

To obtain relief in a post-conviction proceeding, a petitioner must demonstrate that his or her "conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). "'Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010) (quoting *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009)).

---

[3] For clarity, we have combined two of petitioner's issues into one because of the substantial overlap in the pertinent facts and analysis.

Appellate courts do not reassess the trial court's determination of the credibility of witnesses. *Dellinger v. State*, 279 S.W.3d 282, 292 (Tenn. 2009) (citing *R.D.S. v. State*, 245 S.W.3d 356, 362 (Tenn. 2008)). Assessing the credibility of witnesses is a matter entrusted to the trial judge as the trier of fact. *R.D.S.*, 245 S.W.3d at 362 (quoting *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)). The post-conviction court's findings of fact are conclusive on appeal unless the preponderance of the evidence is otherwise. *Berry v. State*, 366 S.W.3d 160, 169 (Tenn. Crim. App. 2011) (citing *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997)). However, conclusions of law receive no presumption of correctness on appeal. *Id.* (citing *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001)). As a mixed question of law and fact, this court's review of petitioner's ineffective assistance of counsel claims is de novo with no presumption of correctness. *Felts v. State*, 354 S.W.3d 266, 276 (Tenn. 2011) (citations omitted).

The Sixth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, and article I, section 9 of the Tennessee Constitution require that a criminal defendant receive effective assistance of counsel. *Cauthern v. State*, 145 S.W.3d 571, 598 (Tenn. Crim. App. 2004) (citing *Baxter v. Rose*, 523 S.W.2d 930 (Tenn. 1975)). When a petitioner claims that he received ineffective assistance of counsel, he must demonstrate both that his lawyer's performance was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Finch v. State*, 226 S.W.3d 307, 315 (Tenn. 2007) (citation omitted). It follows that if this court holds that either prong is not met, we are not compelled to consider the other prong. *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004).

To prove that counsel's performance was deficient, petitioner must establish that his attorney's conduct fell below an objective standard of "'reasonableness under prevailing professional norms.'" *Finch*, 226 S.W.3d at 315 (quoting *Vaughn v. State*, 202 S.W.3d 106, 116 (Tenn. 2006)). As our supreme court held:

> "[T]he assistance of counsel required under the Sixth Amendment is counsel reasonably likely to render and rendering reasonably effective assistance. It is a violation of this standard for defense counsel to deprive a criminal defendant of a substantial defense by his own ineffectiveness or incompetence. . . . Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations."

*Id.* at 315-16 (quoting *Baxter*, 523 S.W.2d at 934-35). On appellate review of trial counsel's performance, this court "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct

from the perspective of counsel at that time." *Howell v. State*, 185 S.W.3d 319, 326 (Tenn. 2006) (citing *Strickland*, 466 U.S. at 689).

To prove that petitioner suffered prejudice as a result of counsel's deficient performance, he "must establish a reasonable probability that but for counsel's errors the result of the proceeding would have been different." *Vaughn*, 202 S.W.3d at 116 (citing *Strickland*, 466 U.S. at 694). "A 'reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Strickland*, 466 U.S. at 694). As such, petitioner must establish that his attorney's deficient performance was of such magnitude that he was deprived of a fair trial and that the reliability of the outcome was called into question. *Finch*, 226 S.W.3d at 316 (citing *State v. Burns*, 6 S.W.3d 453, 463 (Tenn. 1999)).

### B.  Failure to Advise Petitioner of His Sentencing Range

Petitioner asserts that the result of his criminal case would have been different had trial counsel properly advised him with regard to his sentence exposure as a Range II offender because he would have entered guilty pleas. The State responds by noting that petitioner was "well aware of his potential exposure at the time he turned down the State's plea offer and decided to go to trial," regardless of trial counsel's advice to him or lack thereof. We agree with the State.

Trial counsel testified that he advised petitioner against accepting the State's settlement offer of ten years because the maximum length of the range was twelve years. Thus, due to trial counsel's mistaken belief that petitioner was a Range I offender, he failed to properly advise petitioner with regard to his appropriate sentencing range. However, petitioner suffered no prejudice due to this shortcoming in trial counsel's representation. His previous two attorneys testified that they each fully reviewed petitioner's criminal history with him and advised him with regard to his potential sentence exposure. His second attorney meticulously grouped his prior convictions to determine which ones would be grouped together as "one" offense for sentencing purposes. Petitioner also received letters explaining his sentencing range. Moreover, as an experienced participant in the criminal justice system, petitioner was aware of his own criminal history and would have been advised previously, as a matter of course, that his convictions could be used to enhance future punishments.

In disposing of this claim, the post-conviction court concluded that "petitioner's attorneys prior to [trial counsel] were better prepared to handle his case" and credited their testimony "that the petitioner was well aware of his potential sentencing exposure." The evidence does not preponderate against this conclusion. We deny relief on this claim.

C.  Failure to Adequately Prepare for Trial and Prepare a Defense

Petitioner maintains that trial counsel was ineffective for failing to adequately prepare for trial and prepare a defense.  In denying relief on this claim, the post-conviction court wrote, "In spite of trial counsel's minimal preparation, the Court finds that petitioner received effective representation."  In support thereof, the court noted that trial counsel "effectively cross-examined the law enforcement witnesses at trial . . . , pointed out inconsistencies of the testimony in his closing argument, and pointed out the potential that the substance may have been for personal use."

The evidence does not preponderate against these findings.  Moreover, trial counsel testified that although his strategy depended heavily on emphasizing the missing lab report and photocopies of the "buy" money, the late disclosure of the documents did not have a tremendous effect on his preparation because he, as a matter of course, challenged the credibility of officers in drug cases.  Thus, as the State points out, trial counsel's "strategy was going to be the same with or without the lab report or the 'buy' money."  Petitioner is not entitled to relief.

**CONCLUSION**

Based upon our review of the record, the briefs of the parties, and the applicable legal authority, we affirm the judgment of the post-conviction court.

_____
ROGER A. PAGE, JUDGE